Jon M. Sands
Federal Public Defender
District of Arizona
Therese Michelle Day (GA Bar No. 213810)
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
therese_day@fd.org
Telephone 602.382.2816
Facsimile 602.889.3960

*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard Kenneth Djerf, <br><br> Petitioner, <br> vs. <br><br> Charles L. Ryan, et al., <br><br> Respondents. | No. CV 02-0358-PHX-JAT <br><br> DEATH-PENALTY CASE <br><br> Petitioner's Reply to Respondents' Response to Supplemental Brief on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) |

Petitioner Richard Kenneth Djerf hereby replies to Respondents' Response to Supplemental *Martinez* Brief, District Court Docket Number ("Dkt.") 125. For the reasons set forth below and in his Supplemental Brief, Dkt. 124, Petitioner asks that the Court find that, with regard to Claim 3 of his First Amended Petition, he has presented a colorable claim that his trial attorneys performed deficiently during the 15 months that they represented him prior to his *pro se* guilty pleas and that he was prejudiced by that deficient performance. Petitioner further requests that the Court find that he has presented colorable allegations that his state post-conviction counsel rendered deficient performance in failing to raise Claim 3, thereby establishing a colorable showing of cause to excuse procedural default of the claim and necessitating discovery and an

evidentiary hearing. He further requests that the Court grant his request to expand the record under Rule 7 of the Rules Governing Section 2254 Cases, grant his requests for discovery, and order an evidentiary hearing at which Petitioner can prove both cause and prejudice and his right to relief on the merits of his claim of ineffective assistance of trial counsel. Finally, he requests that the Court grant him relief on the merits of Claim 2 of his First Amended Petition.

## DISCUSSION

### I. Claim 3

*"Factual Findings"*

Respondents quote at length from the Arizona Supreme Court's statement of the facts in its opinion in Petitioner's direct appeal. Dkt. 125 at 3-6. According to Respondents, "[t]hese factual findings by the Arizona Supreme Court are not only entitled to deference, but are presumed to be correct." *Id.* at 6. The facts set forth in the state supreme court's decision, however, are not findings of fact entitled to deference by this Court, despite Respondents' attempt to characterize them as "factual findings."

As explained in *Sumner v. Mata*, 449 U.S. 539 (1981) (discussing the pre-AEDPA standards for factual findings of a state court), a determination of a factual issue made by a state court "shall be presumed to be correct." *Id.* at 550 (quoting 28 U.S.C. § 2254(d) (1966)). The facts recited by the state supreme court in Petitioner's direct appeal opinion, however, were not *determinations* of a factual issue. As the Arizona Supreme Court has repeatedly emphasized, its recitation of facts in criminal appellate opinions present the facts "in the light most favorable to sustaining the verdict." *State v. Dann*, 74 P.3d 231, 236 n.1 (Ariz. 2003); *accord State v. Cromwell*, 119 P.3d 448, 449 n.1 (Ariz. 2005); *State v. Roseberry*, 111 P.3d 402, 411 (Ariz. 2005); *State v. Moody*, 94 P.3d 1119, 1130 n.1 (Ariz. 2004); *State v. Cropper*, 68 P.2d 407, 408 (Ariz. 2003); *State v. Gallegos*, 870 P.2d 1097, 1105 (Ariz. 1994); *State v. Henry*, 863 P.2d 861, 869

(Ariz. 1993). In other words, the appellate court's statement of facts in Petitioner's direct appeal opinion represents the version of facts that most strongly supports the prosecution's case. It does not purport to be an independent or impartial resolution of the factual issues presented in the case. As such, it is not a "determination of a factual issue" within the meaning of *Mata*, and thus is not entitled to even the pre-AEDPA statutory presumption of correctness.

Moreover, none of the "facts" set forth in paragraphs 2 through 12 of Petitioner's direct appeal opinion have any bearing on the issues presently before this Court. Obviously, the Arizona Supreme Court did not address Petitioner's defaulted claim of ineffective assistance of trial counsel in his direct appeal, nor do any of the facts set forth on pages 3 through 6 of the response pertain to the independent issue of the knowing, intelligent, and voluntary nature of Petitioner's guilty pleas.

*Petitioner's burden under* <u>*Martinez*</u>

Respondents devote a significant portion of their response (pages 7 through 12) to their interpretation of Petitioner's burden of establishing cause and prejudice under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In particular, Respondents argue that Petitioner "must establish cause, by showing that PCR counsel was ineffective under both *Strickland* prongs and that the defaulted claim is substantial, *and* prejudice, by showing that the underlying ineffectiveness 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'" Dkt. 125 at 9-10 (quoting *Sexton v. Cozner*, 679 F.3d 1150, 1158 (9th Cir. 2012)). Noticeably absent from Respondents' discussion, however, is any reference to the Ninth Circuit's post-*Sexton* en banc opinion in *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014). In *Dickens*, the en banc majority held, as Petitioner argued in his supplemental brief in this case, that "prejudice" for purposes of a *Martinez* cause-and-prejudice analysis requires only a showing that the petitioner's underlying IAC claim is "substantial." *Id.* at

1321.

*PCR Counsel versus Direct Appeal Counsel*

Respondents begin their refutation of Petitioner's assertion that his state post-conviction attorney, Jamie McAlister, performed deficiently with a misstatement of the Supreme Court's analysis in *Martinez*. Specifically, Respondents cite *Martinez* for the proposition that the "function" of a PCR attorney "is similar to that of an appellate attorney." Dkt. 125 at 15 (citing *Martinez*, 132 S. Ct. at 1317). The Supreme Court did not say this. Rather, the Court observed that "the collateral *proceeding* is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Martinez*, 132 S. Ct. at 1317 (emphasis added). The Court found this correlation between the direct appeal and post-conviction proceedings "because the state habeas court 'looks to the merits of the clai[m]' of ineffective assistance, no other court has addressed the claim, and 'defendants pursuing first-tier review . . . are generally ill equipped to present themselves' because they do not have a brief from counsel or an opinion of the court addressing their claim of error." *Id.* (quoting *Halbert v. Michigan*, 545 U.S. 605, 617 (2005)). At no point in *Martinez* did the Supreme Court equate the role of a state post-conviction attorney with that of an appellate attorney. To the contrary, the Court observed that, unlike appellate advocacy, "[c]laims of ineffective assistance at trial often require investigative work," 132 S. Ct. at 1317, something wholly unrelated to the role of an appellate attorney.

*Evidence of McAlister's Psychotic Break*

Respondents argue that evidence of McAlister's documented psychotic break during her representation of Petitioner "has no bearing on the objective question that must be answered under *Strickland*." Dkt. 125 at 16. Respondents, however, fail to acknowledge Petitioner's citation in his Supplemental Brief to *Bell v. Cone*, 535 U.S. 685 (2002). *See* Dkt. 124 at 14 n.1. Both the majority and

dissenting opinions in *Cone* leave no doubt that evidence of an attorney's severe mental illness may be relevant to an ineffective-assistance claim. *See* 535 U.S. at 697 n.4, 715-16. Respondents cite no authority to counter the Supreme Court's plain statements in *Cone* demonstrating that the type of mental-health evidence Petitioner seeks to present in this case is relevant to an IAC analysis.

*The Reasonableness of McAlister's "Decision" Not to Include Claim 3 in the State PCR Petition*

Respondents' argument that McAlister must have made a reasoned decision not to include Claim 3 in Petitioner's state PCR petition is belied by both the existing record and the additional facts Petitioner has presented. According to Respondents, Petitioner's "defaulted IAC claim is no stronger than the issues PCR counsel presented, and, presumably, she reasonably omitted it." Dkt. 125 at 18. This argument fails for several reasons.

First, Respondents mistakenly believe that Petitioner's pleas of guilty to the four first-degree murder counts waived his claim that trial counsel performed ineffectively. Dkt. 125 at 17-18. As a threshold matter, the plea agreement Petitioner signed expressly identified the rights he was waiving by pleading guilty and it made no reference to his right to seek collateral relief for the ineffective assistance of his trial attorneys:

> I understand that by pleading guilty I will be waiving and giving up my right to a determination of probable cause, to a trial by jury, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to remain silent, my privilege against self-incrimination, presumption of innocence and right to appeal.

ROA 195.

Further, contrary to Respondents' claims, the Arizona courts do not consistently enforce a rule that a defendant's guilty plea waives all claims of ineffective assistance of counsel unrelated to the guilty plea. *See, e.g.*, *State v. Mayo*, 2014 WL 4102493 (Ariz. App. Aug. 14, 2014) (addressing merits of IAC

claims raised by pleading defendant); *and State v. Herald*, 2014 WL 4262163 (Ariz. App. Aug. 28, 2014) (same). And, even if Arizona courts did regularly enforce such a rule, it would not apply to IAC claims related to the defendant's decision to plead guilty. *See Padilla v. Kentucky*, 559 U.S. 356 (2010). Here, Petitioner's claim that his attorneys rendered deficient performance during the first 15 months they represented him is directly related to his subsequent decision to represent himself and to plead guilty. The existing record leaves no doubt that trial counsel's deficiencies led Petitioner to seek their removal. *See* ROA 203, Ex 5 ("I made the decision to represent myself not because I wanted to, but because [trial counsel] repeatedly ignored my requests for any information as to the current status of my case[.]"). And, given that trial counsel indicated that they would not have counseled Petitioner to accept the Government's plea offer had they been representing him, Petitioner's uncounseled decision to accept the plea offer is plainly "related" to counsel's earlier removal from the case. *See* ROA 203, Exh. 4, Addendum 7 (trial counsel statement to press that "[i]t was never my recommendation" that Petitioner accept the plea offer).

Finally, Respondents maintain that, because they believe Claim 3 would have been waived by Petitioner's guilty plea, "[o]bjectively reasonable counsel could therefore have elected not to challenge counsel's ineffectiveness in pretrial matters[.]" Dkt. 125 at 18. However, an allegedly "tactical" decision by an attorney is only reasonable to the extent that the decision is supported by a thorough investigation. *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Silva v. Woodford*, 279 F.3d 825, 842 (9th Cir. 2002). Here, Petitioner has made a colorable factual allegation that McAlister never even obtained the transcripts and pleadings in his case. *See* Dkt. 124 at 16-17. An objectively reasonable attorney would undoubtedly have obtained the record in Petitioner's case. If, as Petitioner alleges, McAlister did not do that, Respondents cannot successfully maintain that McAlister made a reasonable, tactical decision not to include Claim

3 in Petitioner's state post-conviction petition.

## *The Merits of Claim 3*

Respondents next argue that Claim 3 is not colorable. Dkt. 125 at 18-26. Not only is this argument premised on an overly narrow interpretation of Petitioner's claim, it also disregards substantial facts alleged in Petitioner's supplemental brief demonstrating that trial counsel failed to conduct even the most basic investigation of the facts of Petitioner's case. Respondents describe Claim 3 as an "IAC claim for failing to communicate and/or visit [Petitioner] to his satisfaction." Dkt. 125 at 22. Petitioner's claim, however, is far more encompassing that Respondents would have this Court believe. Specifically, Claim 3 of Petitioner's Amended Habeas Corpus Petition broadly alleged that trial counsel rendered ineffective assistance of counsel during the 15-month period they represented him from late 1993 until early 1995. In his supplemental brief, Petitioner set forth specific and detailed factual allegations regarding trial counsel's failure to investigate Petitioner's case, to develop a defense, and to keep Petitioner apprised of developments in his case. *See* Dkt. 124 at 25-34. Among trial counsel's errors were the failure to interview crucial witnesses, request expert assistance in a timely fashion, and review the physical evidence. *See id.* at 25.

Respondents do not address any of Petitioner's factual allegations concerning trial counsel's grossly deficient investigation. Instead, they attempt to portray Claim 3 as merely a claim that trial counsel should have visited and communicated with Petitioner more often. *See* Dkt. 125 at 22, lines 8-10. Petitioner, however, has provided the Court with a colorable claim that his attorneys *not only failed to communicate with him*, but also failed to conduct a minimally competent investigation of either the facts of his case or the potential defenses available to him. Respondents do not refute Petitioner's factual allegations in support of these arguments. Petitioner has thus met his burden of

pleading a colorable claim and he is entitled to discovery and an evidentiary hearing at which he can prove his claim.

Moreover, even if Petitioner's claim were limited solely to his allegation that his attorneys failed to communicate with him for seven months, Respondents do not address Petitioner's reliance on *Crandell v. Bunnell* ("*Crandell I*"), 25 F.3d 754, 755 (9th Cir. 1994). *Crandell I* confirms that such a lengthy period of non-communication with a client constitutes deficient performance. *See* Dkt. 124 at 28. If the failure of counsel to meet with a client for two months was "unusual enough . . . to raise doubts about the lawyer's competence" in *Crandell I*, how much more egregious was counsel's failure to meet with Petitioner for seven months as he awaited trial on, among other serious charges, four counts of first-degree murder. Thus, even if Petitioner's claim were as limited as Respondents attempt to portray it, he would still have alleged a colorable claim of deficient performance. He thus is entitled to discovery and an evidentiary hearing.

*28 U.S.C. § 2254(e)(2)*

Respondents are incorrect in asserting that Petitioner must meet the requirements of 28 U.S.C. § 2254(e)(2) before this Court may grant him an evidentiary hearing. Dkt. 125 at 26. *See Woods v. Sinclair*, 764 F.3d 1109, 1138 n. 16 (9th Cir. 2014) (citing *Dickens*, 740 F.3d at 1320-22; and *Detrich v. Ryan*, 740 F3d. 2137, 1247 (9th Cir. 2013) (en banc)).

**II. Claim 2**

Respondents maintain that Petitioner has failed to identify specific Supreme Court authority holding either that (1) it is inadequate merely to inform a pleading defendant that he is waiving his "right to be represented by counsel"; (2) a court must expressly inform a pleading defendant that he has the right to proceed to trial represented by "*constitutionally competent* counsel"; or (3) "the trial court was somehow required to advise [Petitioner] that his trial counsel were ineffective and he had a right to go to trial with other lawyers." Dkt. 125 at 29

(emphasis in original). According to Respondents, "A state court cannot be said to have failed to follow a *lack* of clearly established federal law." *Id.*

There is no "lack" of Supreme Court authority addressing the issue raised in Claim 2. As Petitioner explained in his Supplemental Brief, since 1938 clearly established federal law has required that "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case*, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (emphasis added). *Accord Patterson v. Illinois*, 487 U.S. 285, 298 (1988) (noting "pragmatic approach" to type of warning required to ensure valid waiver of Sixth Amendment right to counsel); *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) ("The information a defendant must possess in order to make an intelligent election [to forego the right to counsel], our decisions indicate, will depend on a range of case-specific factors, including the defendant's education and sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.").

Clearly established federal law thus required the Arizona courts to evaluate the knowing, voluntary, and intelligent nature of Petitioner's guilty pleas *within the context of the facts of his particular case*. Both the trial court and the Arizona Supreme Court were well aware of Petitioner's difficulties with his attorneys and his concerns about the adequacy of their representation. The trial judge was obligated to determine that Petitioner was aware that, by pleading guilty, he was waiving his right to a trial represented by competent counsel. Despite his presumptuous statements to the contrary, the trial judge could not possibly have known whether Petitioner's appointed counsel were performing within the parameters of the Sixth Amendment. What he *did* know, however, was that Petitioner was deeply concerned about the quality of the representation he had received. Accordingly, pursuant to *Zerbst*, *Patterson*, and *Tovar*, the trial judge

9

1 and the Arizona Supreme Court had an obligation to determine that Petitioner truly understood the rights afforded him under the Constitution. By telling Petitioner that he was entitled only to represent himself or to be represented by attorneys about whom he had repeatedly and specifically complained, the state court failed to fulfill its obligation to ensure that Petitioner's guilty pleas were knowing, intelligent, and voluntary.

Respondents also argue that Petitioner has failed to establish that, even if a constitutional violation occurred, the error had a substantial and injurious effect. Dkt. 125 at 31. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *Brecht* prejudice is self-evident under these circumstances, however. Petitioner forfeited his right to a trial and admitted guilt to four counts of first-degree murder, each carrying the potential for a death sentence. He entered those guilty pleas after having been erroneously informed by the trial judge that his only other options were to proceed to trial representing himself or to be represented by two attorneys with whom he had an irreconcilable conflict engendered by their deficient performance. This error certainly had a substantial and injurious effect on Petitioner's decision to waive his right to trial and to plead guilty to four counts of capital murder. Accordingly, *Brecht* error exists in this case.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court find that, in Claim 3 of his First Amended Petition, he has presented a colorable claim that his trial attorneys performed deficiently during the 15 months that they represented him prior to his *pro se* guilty pleas and that he was prejudiced by that deficient performance. Petitioner further requests that the Court find that he has presented colorable allegations that his state post-conviction counsel rendered deficient performance, thereby establishing a colorable showing of cause to excuse procedural default and necessitating an evidentiary hearing.

Petitioner also requests that the Court grant his request to expand the

record under Rule 7 of the Rules Governing Section 2254 Cases, grant his requests for discovery, and order an evidentiary hearing at which Petitioner can prove both cause and prejudice and his right to relief on the merits of his claim of ineffective assistance of trial counsel.

Finally, Petitioner requests that the Court grant him relief on the merits of Claim 2 of his First Amended Petition.

Respectfully submitted this 17th day of July, 2015.

                                  Jon M. Sands
                                  Federal Public Defender
                                  Therese Michelle Day
                                  Assistant Federal Public Defender

                                  <u>s/Therese Michelle Day</u>
                                  Counsel for Petitioner

**Certificate of Service**

I hereby certify that on July 17, 2015, I electronically filed the foregoing Petitioner's Reply to Respondents' Response to Supplemental Brief on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/ Robin Stoltze</u>
Legal Assistant
Capital Habeas Unit